FILED
2007 Jun-26  PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

F I L E  **N** THE UNITED STATES DISTRICT COURT

JUN 2 6 2007 FOR THE NORTHERN DISTRICT OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

<u>Southern DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | CASE NO.  4:07-CR-145-UWC-RRA |
| | ) | |
| **RANDALL GARRETT COLE** | ) | |

## PLEA AGREEMENT

The United States of America and defendant RANDALL GARRETT COLE

hereby acknowledge the following plea agreement in this case:

## <u>PLEA</u>

The defendant agrees to plead guilty to **COUNTS ONE** and **TWO** of the

Indictment filed in the above numbered and captioned matter. In exchange, the

United States Attorney, acting on behalf of the United States and through the

undersigned Assistant United States Attorney, agrees to dismiss **COUNTS**

**THREE** and **FOUR** and to recommend the disposition specified below.

## <u>TERMS OF THE AGREEMENT</u>

Παγε 1 οφ 14

*RGC*

## I. MAXIMUM PUNISHMENT:

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Conspiracy, in violation of Title 18, United States Code, Section 371, as charged in COUNT ONE and TWO is:

a.     Imprisonment for not more than five (5) years;

b.     A fine of not more than $250,000, or,

c.     Both (a and b);

d.     Supervised release of not three (3)years; and

e.     Special Assessment Fee of $100 per count.


## II. FACTUAL BASIS FOR PLEA:

The United States would be prepared to prove the following facts at the trial of this case:

In the fall of 2006, a Confidential Informant (CI) working with the ATF met a forty-six (46) year old white male who identified himself as "Jeff Osborne" while at a local flea market called "Trade Day." Osborne, whose true name is Raymond Kirk Dillard, told the CI about the "Free Militia," a small militia of which Dillard was a part and in which he held the rank of Major. Dillard and the CI maintained contact and eventually, Dillard showed the CI two hand grenades at Dillard's

RGC

residence.

The CI eventually was accepted into the Free Militia and was given the rank of Sergeant Major. The CI has been present for conversations among the members of the Free Militia. From those conversations, the CI learned that the Free Militia was stockpiling weapons for a war with the United States Government that they believed to be inevitable due to overbearing government control that had "gotten out of hand."

The CI also learned that the Alabama Free Militia strongly opposed illegal immigration, specifically immigrants from Mexico. The CI learned that militia members had received information about a group of illegal immigrants of Mexican descent who congregated on weekends in the area of Birmingham, Alabama, for the purpose of shooting automatic weapons. The DeKalb County branch of the Free Militia, lead by Dillard, planned to scout the location where this activity occurred and then "raid the Mexicans." The purpose of this planned "raid" was to seize the illegal immigrant's automatic weapons for use by the militia.

The CI advised law enforcement that the Free Militia planned to conduct this reconnaissance and "raid" in the near future. The CI further advised that the Free Militia members claimed to own a rocket launcher and rockets that they stored in a small cave in DeKalb County, Alabama, to prevent law enforcement officers from

RGC

seizing them.

During March, 2007, the CI and Dillard went to the residence of the co-defendant, Adam Lynn Cunningham on County Road 309 in Collinsville, Alabama. Cunningham held the rank of Sergeant in the Free Militia. The CI also meet the defendant, RANDALL GARRETT COLE, who held the rank of Lieutenant in the militia. While at the residence, the CI observed approximately four (4) improvised hand grenades on a coffee table and two (2) empty hand-grenade hulls brought in by a COLE.

The CI said that Dillard picked up one of the hand grenades on the table and quickly put a fuse and shotgun-type primer inside of it. Then Dillard said, "That's how easy it is, this one's ready to go." Dillard told the CI that he used explosive powder obtained from fireworks to construct grenades. Dillard also told the CI that Dillard could sell the CI some grenades because Dillard needed money to buy additional grenade hulls from surplus stores.

On March 29, 2007, the CI traveled with Dillard to Bynum, Alabama, to the Outpost Military Surplus store and purchased twelve (12) empty, military training grenade hulls. On April 7, 2007, the CI, COLE, Cunningham, Dillard, and McElroy met at Cunningham's residence in Collinsville for the purpose of constructing grenades and a silencer from components acquired by the conspirators.

RGC

This meeting was secretly video taped. In the video Cole can be seen welding holes closed at the bottoms of approximately eleven military hand grenade hulls and the silencer.

On April 13, 2007, COLE, Dillard, McElroy and the CI met at Cunningham's residence in Collinsville for the purpose of continuing to construct grenades from the components acquired by the conspirators. MCElroy spray painted the grenade spoons and assisted Dillard with stripping the aluminum sheathing from the fuse assembly.

On the evening of April 17, 2007, the CI went to Cunningham's residence with Dillard, who planned to work on the fuse assembly of the grenades. While there Cunningham talked about how well the militia's grenades are hidden. Cunningham claimed to know the wooded area behind his house better than any and said that the CI should not worry about anyone finding the grenades. Cunningham offered to help the CI hide his grenades after they are fully constructed.

On or about April 19, 2007, the CI and Dillard met McElroy and CUNNINGHAM at CUNNINGHAM's residence. Dillard wanted to hide his "grenade making kit" in the woods. McElroy showed the CI were the militia's stash of grenades were buried in the wooded area behind CUNNINGHAM's house.

RGC

Two military ammunition cans were hidden underneath a large rock approximately 75 yards behind CUNNINGHAM's house. One ammunition can contained approximately twenty three (23) hand grenades that appeared to be completed. The other ammunition can contained one (1) grenade hull and all the components needed to complete the grenade, except for explosive powder.

On April 26, 2007, agents executed a search warrant at CUNNINGHAM's residence. A search of the wood line behind CUNNINGHAM's house found the two ammunition cans. One can contained twenty-four (24) improvised hand grenades. The other ammunition can contained assorted grenade components such as grenade hulls spoons, springs fuse, primers, super glue and fuse assemblies. Additional grenade components were found inside the house. Examination of the twenty-four (24) improvised hand grenades revealed that the grenades did not contain explosive powder.

On April 26, 2007, agents executed a search warrant at Bonnell Hughes' residence on Pea Ridge Road in Crossville, Alabama. Hughes was advised of his *Miranda* rights and he signed a written waiver of those rights. Hughes immediately cooperated with the agents, pointing out ammunition cans in a shed by the house which contained eighty (80) hand grenades; and sixty-eight (68) improvised explosive projectiles. A launcher for the projectiles was found in

Παγε 6 οφ 14

RGC

Hughes' house. A silencer was found on top of a white cabinet inside the shed.

Hughes immediately identified it as a firearms silencer. Hughes told the agents he

also had a machine gun and directed the agents to a trash can with a large plastic

container lid on top. Forensic examination of grenades recovered from the Hughes'

residence showed that they were in fact destructive devices. The silencer found at

Hughes' residence was not registered to him or any of the defendants in the

National Firearms Registration and Transfer Record.

The defendant hereby stipulates that the facts as stated above are

substantially correct.

Randall S. Cole
RANDALL GARRETT COLE

## III. RECOMMENDED SENTENCE:

Pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will

Παγε 7 οφ 14

RGC

recommend the following disposition:

> (a)   That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;
>
> (b)   That the defendant be sentenced at the low end of the sentencing guideline range as that range is determined by the Court.
>
> (c)   That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court.
>
> (d)   That the defendant pay a Special Assessment fee of $ 200, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF:

In consideration of the recommended disposition of this case, I, RANDALL GARRETT COLE hereby waive and give up my right to appeal my conviction in this case, as well as any fines, restitution, and/or sentence the court might impose upon me. Further I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the

RGC

sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:

The defendant reserves the right to contest in an appeal or post-conviction proceeding any or all of the following:

      (a)   Any sentence imposed in excess of the applicable statutory maximum sentence; and

      (b)   Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed.

The defendant acknowledges that before giving up these rights, discussed the Federal Sentencing Guidelines and their application to case with attorney, who explained them to satisfaction.  The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, RANDALL GARRETT COLE, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

**RANDALL GARRETT COLE**

RGC

## V. UNITED STATES SENTENCING GUIDELINES:

Counsel has explained to the defendant, that in light of the United States Supreme Court's recent decision in United States v. Booker, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range and defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT:

The Parties fully and completely understand and agree that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT,** and that the Court need not accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, does not have the right to withdraw plea.

## VII. VOIDING OF AGREEMENT:

Παγε 10 οφ 14

$RGC$

The defendant understands that should (a) violate any federal, state, or local law after entering into this Plea Agreement, (b) move the Court to accept plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or (c) tender a plea of *nolo contendere* to the charges, the agreement will become NULL and VOID, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained therein.

## VIII.  OTHER DISTRICTS AND JURISDICTIONS:

The parties understand and agree that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX.  TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS:

Unless otherwise specified herein, the parties understand and acknowledge that this agreement does not apply to or in any way limit any pending or prospective

RGC

proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## X.  DEFENDANT'S UNDERSTANDING:

I have read and understand the provisions of this agreement consisting of fourteen (14)  pages.  I have discussed the case and my constitutional and other rights with my lawyer.  I am satisfied with my lawyer's representation in this case.  I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence.  I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated hereafter:

Παγε 12 οφ  14

RGC

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate I have read and approve all of the previous paragraphs of this Agreement, and understand all of the provisions of this Agreement, both individually and as a total binding agreement.

06/22/07
DATE

RANDALL GARRETT COLE
Defendant

## XI. COUNSEL'S ACKNOWLEDGMENT:

I have discussed this case with my client in detail and have advised  of his rights and all possible defenses.  My client has conveyed to me that understands this Agreement and consents to all its terms.  I believe the plea and disposition set forth herein are consistent with the negotiations of counsel and in accord with my client's desires and my best judgement.  I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

Παγε 13 οφ 14

RGC

6-26-07
DATE

James E. Harris

JAMES E. HARRIS, ESQ.
Defendant's Counsel

## XII. GOVERNMENT'S ACKNOWLEDGMENT:

I have reviewed this matter and concur that the plea and disposition set

forth herein are appropriate and are in the interests of justice.

ALICE H. MARTIN
United States Attorney

6/26/07
DATE

MICHAEL W. WHISONANT
Assistant United States Attorney

RGC